IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN SECTION OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| FRED SIMS and JESIAH SIMS,<br><br>    PLAINTIFFS,<br><br><br>v.<br><br>MADISON COUNTY, TENNESSEE, a Tennessee municipality, CITY OF JACKSON, TENNESSEE, a Tennessee municipality, RANDY S. COYNE, in his official capacity as the Drug Task Force Commander for the 26th Judicial District Drug Task Force, SPECIAL AGENT ZACHARY COBB, SPECIAL AGENT JOSHUA KELLER, SERGEANT CHRISTIAN BOXELY, SERGEANT BRYAN CHAMPINE, OFFICER JHNOUS LONG, OFFICER FLOWERS, and OFFICER FREED,<br><br>    DEFENDANTS. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>) | **Case No.**<br><br>**COMPLAINT FOR VIOLATIONS OF THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983**<br><br><br>**JURY TRIAL DEMANDED PURSUANT TO FED. R.  CIV. PRO. 38(a) & (b)** |

---

## COMPLAINT

---

Plaintiffs Fred Sims and Jesiah Sims (hereinafter collectively referred to as "Plaintiffs"), by and through their designated attorneys, for their Complaint allege as follows:

**I.**

## NATURE OF THE ACTION

1. Plaintiffs were subjected to multiple civil rights violations at the hands of law enforcement agents and officers from the 26th Judicial District Drug Task Force and the

1

Jackson Police Department who forced their way into Plaintiffs' home without probable cause or a warrant, brutalized and tased Plaintiffs, and arrested both Plaintiffs without cause, causing both Plaintiffs to be wrongfully incarcerated for 3 days. Plaintiffs suffered physical injuries, emotional damage, reputational damage, and damage to their home.

## II.

## SUBJECT MATTER JURISDICTION AND VENUE

2.  This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a) on the grounds that the claims asserted herein arise under 42 U.S.C. §§ 1983 and 1988.

3.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a)(b) and (c) on the grounds that all or a substantial portion of the acts giving rise to the violations alleged herein occurred in this judicial district.

## III.

## THE PARTIES AND PERSONAL JURISDICTION

4.  Plaintiff Fred Sims "Fred") is a 65-year-old Black man and a resident of Madison County, Tennessee. Plaintiff Fred is the father of Plaintiff Jesiah Sims.

5.  Plaintiff Jesiah Sims ("Jesiah") is a 21-year-old Black man and a resident of Madison County, Tennessee. Plaintiff Jesiah is the son of Plaintiff Fred Sims.

6.  Defendant City of Jackson, Tennessee ("Defendant City of Jackson" or "the City") is a Tennessee municipality liable for its policies, customs, practices, failures to properly investigate and punish its officers for violations of constitutional rights, and the failure to train its employees, is a party defendant to this matter. Defendant City of Jackson is a political subdivision of the State of Tennessee and among its other functions operates and

maintains a law enforcement agency known as the Jackson Police Department. At all times hereto, the City and its agents acted under color of state law.

7. Defendant Madison County, Tennessee ("Defendant Madison County" or "the County") is a Tennessee municipality liable for its policies, customs, practices, failures to properly investigate and punish its officers for violations of constitutional rights, and the failure to train its employees, specifically the members of the 26th Judicial Drug Task Force, is a party defendant to this matter. Defendant Madison County is a political subdivision of the State of Tennessee and among its other functions operates and maintains a law enforcement task force known as the 26th Judicial District Drug Task Force. At all times hereto, the County and its agents acted under color of state law.

8. Defendant Randy S. Coyne ("Defendant Coyne") is a Madison County employee. At all times relevant to this Complaint, Defendant Coyne was the Drug Task Force Commander for the 26th Judicial District Drug Task Force. Defendant Coyne is sued in his official capacity.

9. Defendant Special Agent Zachary Cobb ("Defendant Cobb") is or was at all times relevant to this Complaint employed by Madison County as a special agent with the 26th Judicial District Drug Task Force and acted, by virtue of his position, under color of state law. Defendant Cobb is sued in his individual capacity.

10. Defendant Special Agent Joshua Keller ("Defendant Keller") is or was at all times relevant to this Complaint employed by Madison County as a special agent with the 26th Judicial District Drug Task Force and acted, by virtue of his position, under color of state law. Defendant Keller is sued in his individual capacity.

11. Defendant Sergeant Christian Boxely ("Defendant Boxely") is or was at all

3

times relevant to this Complaint employed by the City of Jackson as a sergeant with the Jackson Police Department and acted, by virtue of his position, under color of state law. Defendant Boxely is sued in his individual capacity.

12.    Defendant Sergeant Bryan Champine ("Defendant Champine") is or was at all times relevant to this Complaint employed by the City of Jackson as a sergeant with the Jackson Police Department and acted, by virtue of his position, under color of state law. Defendant Champine is sued in his individual capacity.

13.    Defendant Officer Jhnous Long ('Defendant Long") is or was at all times relevant to this Complaint employed by the City of Jackson as an officer with the Jackson Police Department and acted, by virtue of his position, under color of state law. Defendant Long is sued in his individual capacity.

14.    Defendant Officer Flowers ("Defendant Flowers") is or was at all times relevant to this Complaint employed by the City of Jackson as an officer with the Jackson Police Department and acted, by virtue of his position, under color of state law. Defendant Flowers is sued in his individual capacity.

15.    Defendant Officer Freed ("Defendant Freed") is or was at all times relevant to this Complaint employed by the City of Jackson as an officer with the Jackson Police Department and acted, by virtue of his position, under color of state law. Defendant Freed is sued in his individual capacity.

**IV.**

**FACTUAL ALLEGATIONS**

**A.    The Pursuit and Arrest of Brandon Boles**

16.    On November 27, 2024, Defendant Cobb, a Special Agent with the 26th Judicial

District Drug Task Force ("26th DTF") was pursuing a vehicle driven by Brandon Boles ("Boles"). Defendant Cobb described the suspect driving the vehicle as "a light-skinned black male with kind of dreadlock-style hair and a red durag." Boles was the only individual Defendant Cobb could see in the vehicle.

17.    The vehicle drove to a house at 111 Moorewood Drive, pulled into a two-car garage attached to the house, and closed the garage door.

18.    111 Moorewood Drive is owned by Plaintiff Fred Sims. Both Plaintiffs reside at 111 Moorewood Drive.

19.    Plaintiffs know Boles because he is their barber and friend. Boles does not and has never lived at 111 Moorewood Drive.

20.    Plaintiffs could see flashlights shining into the house and could hear men screaming for them to "come the fuck outside."

21.    Defendant Cobb and other officers, including SWAT, created a perimeter around the house.

22.    Defendant Cobb, the case manager, left to prepare a search warrant to search for the vehicle Boles had been driving.

23.    Plaintiff Fred Sims, still inside his house, asked Boles what was going on, and Boles admitted that he was "in a high-speed chase with the police" and that they had followed him to the Sims' residence.

24.    Plaintiff Fred told Boles that Boles needed to surrender to law enforcement. Approximately two minutes later, Boles agreed to surrender himself. Fred opened the front door for Boles to exit.

25.    Boles put his hands up and walked out of the front door down the wooden

wheelchair ramp to surrender to law enforcement. Although Boles obeyed law enforcements' orders, he was aggressively thrown to the ground and handcuffed.

26.     While en route to obtain a warrant for the fleeing vehicle, Defendant Cobb realized he had forgotten to take pictures of the house for the search warrant, so he turned around and returned to 111 Moorewood Drive.

27.     By the time Defendant Cobb arrived back on the scene, Boles was in custody, handcuffed, and presented no  threat to anyone.

28.     Defendant Cobb recognized Boles as matching the description of the driver of the vehicle – a light-skinned Black male with dreads and a red durag.

29.     When Boles was arrested, officers found the keys to the vehicle in his pocket. Jackson Police Department SWAT had arrived on the scene and had the house completely surrounded.

**B.      The Unlawful Arrest of Plaintiffs and Warrantless Search of Plaintiffs' Home**

30.     Despite already having the sole suspect in custody, law enforcement continued to demand that Plaintiffs Fred and Jesiah Sims also exit the residence and surrender to law enforcement.

31.     Seeing the harsh treatment of Boles, Fred (who is 65 years of age) was afraid for his life. He stated through the door that he was the owner of the house and told officers to go get a search warrant if they wanted to come into his home. He told officers that he was "trying to stay out of it."

32.     Fred also asked officers why he should come outside when they already had Boles in custody. He was not given an answer.

33.     Law enforcement had no reason to believe that Fred and Jesiah Sims had been in

the vehicle with Boles or that either of the Plaintiffs were involved in any criminal activity.

34.     Officers told Plaintiffs over the PA system that they would be "staying all night" if Plaintiffs did not come outside.

35.     Jesiah, seeing the brutal way officers were treating Boles and concerned that Boles would be hurt, stepped into the front doorway to witness and record the excessive force to which Boles was being subjected.

36.     Seeing that Jesiah was videoing the mistreatment of Boles, another law enforcement officer screamed at Jesiah, "bring your ass outside too." Defendant Jones and several other officers pointed firearms (rifles and pistols) at Jesiah. Jesiah then began to move back inside the house.

37.     Despite having no cause to detain or arrest Jesiah, Defendants Freed, Flowers, Boxely, Champine, and Long grabbed Jesiah and threw him to the ground, pushing him face-first into the wooden wheelchair ramp to the residence.

38.     Defendant Champine hit Jesiah multiple times in the back and the side of his head, resulting in scratches to Jesiah's face and feet, and significant damage to his teeth.

39.     Jesiah was never given a reason as to why he was being detained or arrested.

40.     Plaintiff Fred Sims, still standing behind the front door within the interior of his residence, witnessed the brutalization of his son.

41.     Although officers had no cause or justifiable reason to detain or arrest Fred, they continued to order him to step outside and raise his hands.

42.     Knowing that he had done nothing wrong and exercising his constitutional right to be free from unlawful seizure, Fred stepped further into his residence.

43.     As Fred was closing the front door to his house, Defendant Champine deployed

7

his taser, tasing Fred in his own home.

44.     After he was tased, Fred stumbled backwards and closed the door to his house.

45.     Defendant Keller then kicked the door open, and Defendants Keller, Jones, Long, and Champine, as well as other law enforcement officers, illegally entered the residence.

46.     Defendant Jones forced Fred to the ground and put handcuffs on him. Defendant Keller pushed Fred's head into the floor. When Fred complained of pain and told officers that he was 65 years old, Defendant Keller told him "I don't give a fuck" and to "get the fuck up."

47.     When Fred told Defendant Keller that he was physically unable to get off the floor, Defendant Keller pulled him up by the handcuffs and pushed him into the wall, causing Fred unnecessary pain.

48.     Jesiah, still pinned to the wooden wheelchair ramp by officers and terrified for his father's life, shouted for Defendant Keller to stop hurting his 65-year-old dad.

49.     Both Defendant Long and another officer tased Jesiah almost simultaneously, even though Jesiah was unarmed and still pinned to the wooden ramp by the other officers.

50.     After Defendants Keller and Champine forced their way into the Sims' residence, SWAT entered the residence and conducted an illegal sweep where they saw marijuana in plain view.

51.     Fred was asked by an officer if he consented to the already-ongoing search of his residence. When he said no, he was told that they already had what they needed to get a warrant.

52.     Neither Plaintiff was advised of his rights or given a reason for his arrest.

53.     Both Plaintiffs were held in jail for 3 days. It is the only time either Plaintiff had ever been incarcerated. Boles, the actual suspect involved in the matter, was released from jail

before either Plaintiff.

54.     After agents illegally forced their way into the Sims residence, Defendant Cobb submitted an affidavit before Judge Joseph Howell, seeking a search warrant for the Sims' home. The affidavit did not state that there was a forcible warrantless entry through the front door of the Sims' residence or that both Fred and Jesiah Sims had been violently seized and arrested without reasonable suspicion or probable cause. With no knowledge of the preceding illegal search, Judge Howell signed the warrant.

55.     Defendants returned to Plaintiffs' house and executed the search warrant, where they located and seized 3 pistols, all legally owned by Fred Sims, and marijuana.

56.     Defendants Champine and Long charged both Plaintiffs with resisting arrest in violation of Tenn. Code Ann. § 39-16-602. The affidavits of complaint submitted by both Defendants omitted material facts about their own egregiously unconstitutional actions, and were intended to mislead the court to believe that Fred and Jesiah had been involved in the car chase with Boles.

57.     Defendant Cobb charged Fred Sims with violations of Possession of Schedule VI with Intent to Sell (Tenn. Code Ann. 39-17-417), Possession of a Firearm During the Commission of a Dangerous Felony (Tenn. Code Ann. 39-17-1324), and Possession of Drug Paraphernalia (Tenn. Code Ann. 39-17-425). The affidavit of complaint submitted by Defendant Cobb omitted material facts about Defendants' own egregiously unconstitutional actions.

**C.     The Charges Against Plaintiffs are Dismissed**

58.     At a preliminary hearing before the General Sessions Court of Madison County, Tennessee, Defendant Cobb testified that on the night of November 27, 2024, he lacked any

9

reasonable suspicion that either Plaintiff had been in the car with Boles or that they were involved in any criminal activity.

59.     Defendant Cobb also confirmed that he knows a citizen does not have to come out of their house just because law enforcement wants to detain them.

60.     Defendant Cobb testified that he was aware that, if Fred and Jesiah Sims did not want to be interviewed by law enforcement, they did not have to be.

61.     Defendant Cobb testified that if he had grounds for an arrest warrant, he could have gotten one.

62.     Defendant Cobb testified that he did not have any factual basis to believe that there was any danger to officers inside the house.

63.     Defendant Cobb testified that when Boles was arrested, he had the keys to the vehicle involved in the chase in his pocket. Despite this, Defendant Cobb testified that he never asked Fred or Jesiah Sims to simply open their garage door so that law enforcement could take possession of and search Boles's vehicle.

64.     Defendant Cobb testified that law enforcement had the residence surrounded, with flashlights and firearms pointed at the residence, and that they could have gone to get a search warrant to look for the vehicle had Plaintiffs been unwilling to open the garage door.

65.     After agents illegally forced their way into the Sims residence, Defendant Cobb submitted an affidavit before Judge Joseph Howell, seeking a search warrant for the Sims home. The affidavit did not state that there was a forcible warrantless entry through the front door of the Sims' residence, that Fred Sims had been tased through the door in his own home, or that Defendant Keller kicked the front door open in order to go in.

66.     Defendant Cobb testified that he has not been trained to include such details in

10

search warrant affidavits.

67.    Defendant Keller also testified at the preliminary hearing.

68.    Defendant Keller testified that Fred Sims was tased because "As officers started to approach him, he then tried to flee back into the residence."

69.    Defendant Keller testified that he kicked the front door three times before he was able to successfully enter the Sims home.

70.    Defendant Keller also testified that he had no information that Fred and Jesiah were dangerous, armed, or had a violent record. Nevertheless, Defendant Keller's testimony makes it clear that he still believes that he had a right to enter the Sims house based on "the totality of the circumstances."

71.    After testimony from Defendants Cobb and Keller, the court dismissed the charges against both Plaintiffs. The court stated:

> I'll tell you what the totality of the circumstances is. Evasive answers. The nerve of a citizen of the United States exercising their constitutional right to have a different skin pigment than you. Why don't you come to Tennessee? . . . Turn your clocks back 200 years. This is so wrong. Dismissed.

72.    Plaintiffs suffered significant emotional and physical damages because of Defendants' unconstitutional actions. The damage to Jesiah's teeth required extensive dental work. Defendants also impounded Fred's vehicle, which was not only entirely unrelated to any alleged crimes, but was not even at the residence on November 27, 2024. It was at the shop being serviced. Still, the vehicle was impounded and held for months, requiring Fred to rent vehicles in the interim to attend court dates and forcing him to pay for the return of his vehicle.

73.    Neither Fred or Jesiah has a criminal record.

# VI.
## CAUSES OF ACTION

**COUNT 1 – UNLAWFUL SEIZURE AND FALSE ARREST
IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS
TO THE UNITED STATES CONSTITUTION
(AGAINST DEFENDANTS COBB, KELLER, BOXELY,
CHAMPINE, LONG, FLOWERS, and FREED)
(42 U.S.C. § 1983)**

74. Plaintiff re-alleges paragraphs 1-73 of this Complaint as if set forth verbatim herein.

75. At all times relevant to this action, no Defendant had probable cause nor reasonable suspicion based upon articulable facts to seize or arrest either Plaintiff.

76. Nonetheless, Defendants forcibly seized and arrested Plaintiffs without probable cause and without ever telling Plaintiffs why they were being arrested.

77. At all times relevant to this action, no Defendant had probable cause nor reasonable suspicion based upon articulable facts to forcibly enter Plaintiffs' home without a warrant.

78. Defendants all lacked reasonable articulable suspicion or probable cause to detain or arrest Plaintiffs and to enter their home. Facts and circumstances within Defendants' knowledge were insufficient to allow them to believe that either Plaintiff had committed a crime, was committing a crime, or was about to commit a crime. Additionally, Defendants lacked any basis to believe that either Plaintiff posed any danger to Defendants or to the public.

79. Though Defendant Cobb submitted an affidavit for a search warrant to a neutral magistrate, he knowingly omitted vital information from the affidavit with the intent to conduct a second illegal search of Plaintiffs' home based solely upon information obtained through an unconstitutional warrantless search.

12

80.    Defendants' actions resulted in criminal charges against both Plaintiffs.

81.    The charges against Plaintiffs resulted in a deprivation of their liberty, in that both Plaintiffs were taken into custody, jailed, and then forced to comply with Pretrial Release and attend court dates for approximately three months while defending themselves from the false and malicious charges concocted against them without probable cause.

82.    These charges were ultimately resolved in Plaintiff's favor when they were dismissed after the court learned of Defendants' unconstitutional actions and the material omissions from the affidavits.

83.    Defendants acted with malice when they falsely arrested and baselessly charged Plaintiffs.

84.    Plaintiffs were under no legal obligation to come out of their home and submit to Defendants, or to allow Defendants into their home without a warrant. In fact, Defendant Cobb testified under oath that Defendants lacked reasonable suspicion or probable cause.

85.    Defendants' actions therefore violated Plaintiffs' clearly established Fourth Amendment rights, and Defendants are not entitled to qualified immunity.

86.    Plaintiffs suffered injuries, including, but not limited to, violations of their constitutional rights, physical harm, loss of liberty, humiliation, out of pocket expenses and emotional distress as a direct and proximate cause of Defendants' unlawful actions.

**COUNT 2 – USE OF EXCESSIVE FORCE
IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS
TO THE UNITED STATES CONSTITUTION
(AGAINST DEFENDANTS FREED, FLOWERS, BOXELY,
CHAMPINE, LONG, KELLER, AND JONES)
(42 U.S.C § 1983)**

87.    Plaintiff re-alleges paragraphs 1-86 of this Complaint as if set forth verbatim herein.

88.    Defendants Freed, Flowers, Boxely, Champine, and Long used unwarranted and excessive force when they laid hands on Plaintiff Jesiah, seizing him without reasonable suspicion or probable cause.

89.    Defendants used unwarranted and excessive force when they slammed Plaintiff Jesiah Sims onto the wheelchair ramp with no lawful reason. Defendant Champine further used excessive force when he repeatedly hit Jesiah on the back and side of his head, resulting in physical injuries to his face and teeth. Defendant Long further used excessive force when he deployed his taser into Jesiah Sims's torso, despite the fact that Jesiah was already pinned to the ground by multiple other officers.

90.    Defendants' unjustified and excessive use of force deprived Jesiah of his fundamental interest in being secure in his person against unreasonable searches and seizures as guaranteed to him under the Fourth Amendment to the United States Constitution, as applied to state actors by the Fourteenth Amendment.

91.    Defendant Champine used unwarranted and excessive force when he deployed his taser against Fred Sims with no lawful reason..

92.    Defendant Jones used excessive force when he forced Fred to the ground and handcuffed him, despite having no lawful reason to detain or arrest Fred.

93.    Defendant Keller used excessive force when he pushed Fred's head into the floor, pulled him to his feet by the handcuffs, and pushed him into a wall, despite having no lawful reason to detain or arrest Fred.

94.    Defendants' unjustified and excessive use of force deprived Plaintiff Fred of his fundamental interest in being secure in his person against unreasonable searches and seizures as guaranteed to him under the Fourth Amendment to the United States Constitution, as applied

14

to state actors by the Fourteenth Amendment.

95.    When Defendants physically detained both Plaintiffs, they lacked reasonable articulable suspicion or probable cause that either Plaintiff had committed any crime, was committing a crime, or would commit a crime. Furthermore, they lacked any probable cause to believe that either Plaintiff posed a threat of serious bodily injury or real danger of death. Defendants directly participated in and proximately caused the above-described constitutional rights violations.

96.    Additionally, Defendants, while acting under color of state law, were deliberately indifferent, both objectively and subjectively, to Plaintiffs' clearly-established right to be free from unlawful seizure and excessive force. Defendants are therefore not entitled to qualified immunity.

97.    As a direct and proximate cause of the force used against Plaintiffs by the named Defendants, as described herein above, Plaintiffs suffered physical injuries, pain, suffering, loss of enjoyment of life, mental anguish and emotional distress, and medical and related out of pocket expenses.

**COUNT 3 – UNLAWFUL ENTRY AND SEARCH
IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS
TO THE UNITED STATES CONSTITUTION
(AGAINST DEFENDANTS COBB, KELLER, BOXELY,
CHAMPINE, LONG, FLOWERS, and FREED)
(42 .S.C § 1983)
(43**

98.    Plaintiff re-alleges paragraphs 1-97 of this Complaint as if set forth verbatim herein.

99.    At all times relevant to this action, no Defendant had probable cause nor reasonable suspicion based upon articulable facts to enter or search Plaintiffs' home.

100. Nonetheless, Defendant Keller kicked through Plaintiffs' front door and Defendants forcibly entered Plaintiffs' home and conducted what they referred to as a "safety sweep" but was in reality an unconstitutional search.

101. Facts and circumstances within Defendants' knowledge were insufficient to allow them to believe that either Plaintiffs had committed a crime, were committing a crime, or were about to commit a crime. Additionally, Defendants lacked any basis to believe that either Plaintiff posed any danger to Defendants or to the public.

102. Though Cobb later submitted an affidavit for a search warrant to a neutral magistrate for a probable cause determination, he knowingly omitted from the affidavit material facts that would have led any judge or magistrate to deny the search warrant. Agent Cobb omitted this vital information from the affidavit with the intent to conduct an illegal search of Plaintiffs' home and to hide Defendants' own egregiously unconstitutional actions.

103. The illegal entry, search, and fraudulently obtained warrant led to criminal charges against Plaintiffs, which resulted in a deprivation of their liberty, in that both Plaintiffs were taken into custody, jailed, and then forced to comply with Pretrial Release and attend court dates for approximately three months while defending themselves from the false and malicious charges concocted against them without probable cause.

104. These charges were ultimately resolved in Plaintiff's favor when they were dismissed after the court learned of Defendants' unconstitutional actions and the material omissions from the affidavits.

105. Defendant Cobb testified under oath that Defendants lacked reasonable suspicion or probable cause.

106.    Defendants' actions therefore violated Plaintiffs' clearly established Fourth Amendment rights, and Defendants are not entitled to qualified immunity.

107.    Plaintiffs suffered injuries, including, but not limited to, violations of their constitutional rights, physical harm, loss of liberty, humiliation, out of pocket expenses and emotional distress as a direct and proximate cause of Defendants' unlawful actions.

**COUNT 4 – MALICIOUS PROSECUTION
IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS
TO THE UNITED STATES CONSTITUTION
(AGAINST DEFENDANTS COBB, CHAMPINE, AND LONG)
(42 U.S.C. § 1983)**

108.    Plaintiff re-alleges paragraphs 1-107 of this Complaint as if set forth verbatim herein.

109.    Defendant Champine and Long charged Plaintiffs with resisting arrest in violation of Tenn. Code Ann. § 39-16-602.

110.    Defendant Cobb charged Plaintiff Fred Sims with violations of Possession of Schedule VI with Intent to Sell (Tenn. Code Ann. 39-17-417, Possession of a Firearm During the Commission of a Dangerous Felony (Tenn. Code Ann. 39-17-1324), and Possession of Drug Paraphernalia (Tenn. Code Ann. 39-17-425.

111.    Acting without reasonable suspicion or probable cause to detain or arrest Plaintiffs, the Defendants wrongfully instituted legal process against Plaintiffs and subjected Plaintiffs to a wrongful investigation, wrongful prosecution, and wrongful incarceration in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

112.    Defendants made, influenced, or participated in the decision to investigate arrest, charge, and/or covered up their own unconstitutional actions and to ensure that Plaintiffs were investigated, charged, and prosecuted.

17

113.    All Defendants, individually and collectively, lacked probable cause to institute criminal process against Plaintiff.

114.    Plaintiffs' criminal prosecution was initiated by the false narratives in the affidavits of complaint sworn to by Defendants, which failed to inform the court that Defendants had forcibly arrested Plaintiffs without reasonable suspicion or probable cause, and had forcibly entered Plaintiffs' house without a search warrant and without probable cause to do so.

115.    Defendants' material misrepresentations were intended to mislead the court to believe that probable cause existed to proceed with charges against Plaintiffs, notwithstanding Defendants' knowledge that their affidavits were woefully incomplete.

116.    As a consequence of Defendants' wrongful institution of legal process against Plaintiffs, Plaintiffs suffered a deprivation of their liberty, in that they were taken into custody, jailed, and then forced into supervision by Pretrial Release and attend court dates for approximately three months while defending their cases.

117.    Plaintiffs' criminal charges were resolved in Plaintiffs' favor when they were dismissed after the court learned of Defendants' unconstitutional actions.

118.    Plaintiffs' criminal proceedings were not resolved due to any plea or settlement, but were resolved in Plaintiffs' favor because of Defendants' egregiously unconstitutional actions.

119.    Although inessential to their malicious prosecution claim, Defendants acted with malice toward Plaintiffs and subjected Plaintiffs to wrongful investigation, wrongful prosecution, and wrongful incarceration because Plaintiffs exercised their constitutional rights and refused to submit to police detainment and interrogation and refused to allow police to

search their home, when police lacked not only a warrant or probable cause but even reasonable suspicion to believe that Plaintiffs had committed any crimes.

120. Defendants' actions therefore violated Plaintiffs' clearly established rights, and Defendants are not entitled to qualified immunity.

121. Plaintiffs suffered injuries, including, but not limited to, actual damages, deprivations of their constitutional rights, unlawful detention, humiliation, emotional distress, out of pocket expense and damage to their reputation as a direct and proximate cause of Defendants' malicious prosecution of Plaintiffs.

**COUNT 5 – UNCONSTITUTIONAL PRACTICES/DE FACTO POLICIES
UNLAWFUL SEARCH, SEIZURE, USE OF FORCE,
AND MALICIOUS PROSECUTION
IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS
TO THE UNITED STATES CONSTITUTION
(AGAINST DEFENDANTS MADISON COUNTY AND COYNE)
(42 U.S.C. § 1983)**

122. Plaintiffs re-allege paragraphs 1-122 of this Complaint as if set forth verbatim herein.

123. Defendant Madison County, acting by and through its policymakers, officers, and agents, specifically Defendant Coyne, and acting under color of state law, violated the rights of Plaintiffs secured by the Fourth and Fourteenth Amendments of the U.S. Constitution.

124. The acts and omissions of Defendant Cobb and Defendant Keller were the direct and proximate result of the customs, practices, and/or de facto policies of the County.

125. Such customs, practices, or de facto policies here are evidenced by the sworn testimony of both Defendant Cobb and Defendant Keller.

126. Defendant Cobb testified that he has "been told that if there's exigent circumstances to enter a residence without a warrant then you can," and that he believed such

19

exigency existed on the night of November 27, 2024, even though he had no reasonable suspicion or probable cause.

127.    Defendant Keller testified that he believed he had reasonable suspicion on November 27, 2024, because "There was no information saying that there was not" more than one person in the vehicle driven by Boles.

128.    Additionally, Special Agent Cobb omitted from his affidavits material facts that would have led any neutral judge or magistrate to deny his requests for search and arrest warrants. Agent Cobb then testified that these actions were in line with his training, and that he had been told to draft affidavits in this way.

129.    Defendant Madison County has a policy or custom of illegally entering homes, arresting and using force on individuals without reasonable suspicion or probable cause, and/or omitting vital material facts from affidavits as evidenced by the fact that two Special Agent members of the Drug Task Force were so inadequately apprised of their Fourth Amendment duties that they did not consider their actions a violation of those rights or of Madison County.

130.    The customs, practices, and/or de facto policies of Defendant Madison County were a direct and proximate cause of Plaintiffs' injuries, in that said customs, practices, and/or de facto policies were being followed by Defendants Cobb and Keller whose actions gave rise to this civil action.

131.    Further, on information and belief, Defendant Madison County conducted no investigation into this matter and failed to discipline either of the Special Agents involved, despite their clear violation of numerous rights secured by the Constitution. The unlawful search, seizure and violent use of excessive force against Plaintiffs was ratified by Defendant Madison County when the County failed to investigate or discipline the Agents. Plaintiff avers

20

that as evidenced by the foregoing, Defendant Madison County must necessarily have a pattern or practice of ratifying such incidents that this pattern or practice of ratification caused Plaintiffs' injuries.

132.   As a direct and proximate result of the customs, practices, and/or de facto policies of Defendant Madison County, Plaintiffs suffered injuries and damages as detailed herein above.

**COUNT 6 – UNCONSTITUTIONAL PRACTICES/DE FACTO POLICIES
UNLAWFUL SEARCH, SEIZURE, USE OF FORCE,
AND MALICIOUS PROSECUTION
IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS
TO THE UNITED STATES CONSTITUTION
(AGAINST DEFENDANT CITY OF JACKSON)
(42 U.S.C. § 1983)**

133.   Plaintiffs re-allege paragraphs 1-132 of this Complaint as if set forth verbatim herein.

134.   Defendant City of Jackson, acting by and through its policymakers, officers, and agents, and acting under color of state law, violated the rights of Plaintiffs secured by the Fourth and Fourteenth Amendments of the U.S. Constitution

135.   The acts and omissions of Defendants Boxely, Champine, Long, Flowers, and Freed were the direct and proximate result of the customs, practices, and/or de facto policies of the City.

136.   Defendants Champine, Boxely, Long, Flowers, and Freed violated Plaintiffs' Fourth Amendment rights when they violently seized Plaintiffs and forced their way into Plaintiffs' home without probable cause or a warrant.

137.   Defendants Champine and Long omitted from affidavits of complaint material facts about their own egregiously unconstitutional conduct that would have led any neutral

judge or magistrate to deny their requests for arrest warrants.

138.     It is clear that Defendant City of Jackson has a policy or custom of illegally entering homes, arresting and using force on individuals without reasonable suspicion or probable cause, and/or omitting vital material facts from affidavits as evidenced by the fact that five members of the Jackson Police Department were so inadequately apprised of their Fourth Amendment duties that they did not consider their actions a violation of those rights or of Department policies in this case.

139.     Such customs, practices, or de facto policies include, but are not limited to, an ongoing pattern of deliberate indifference to unconstitutional searches, seizures, excessive use of force, and omitting material facts in affidavits for search warrants and arrest warrants.

140.     The customs, practices, and/or de facto policies of Defendant City of Jackson were a direct and proximate cause of Plaintiffs' injuries, in that said customs, practices, and/or de facto policies were being followed by Defendants Boxely, Champine, Long, Flowers, and Freed, whose actions gave rise to this civil action.

141.     Further, on information and belief, Defendant City of Jackson conducted no investigation into this matter and failed to discipline any of the officers involved, despite their clear violation of numerous rights secured by the Constitution. The unlawful search, seizure and violent use of excessive force against Plaintiffs was ratified by Defendant City of Jackson when the City failed to investigate or discipline its officers. Plaintiffs aver that as evidenced by the foregoing, Defendant City of Jackson must necessarily have a pattern or practice of ratifying such incidents.

142.    As a direct and proximate result of the customs, practices, and/or de facto policies of Defendant City of Jackson, Plaintiffs suffered injuries and damages as detailed in this Complaint.

## COUNT 7 – FAILURE TO TRAIN
## IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS
## TO THE UNITED STATES CONSTITUTION
## (AGAINST DEFENDANTS MADISON COUNTY AND COYNE)
## (42 U.S.C. § 1983)

143.    Plaintiff re-alleges paragraphs 1-142 of this Complaint as if set forth verbatim herein.

144.    Defendant Madison County failed to provide adequate training to members of the 26th Judicial District Drug Task Force regarding arrests, searches, warrants, treatment and control of citizens exercising their right to not interact with officers, and appropriate use of force. Defendant Madison County and its policymakers, specifically Defendant Coyne, has a non-delegable duty and responsibility to formulate, oversee, and implement official policies, practices, customs, and procedures to be carried out by its law enforcement officers and other personnel.

145.    As a direct and proximate consequence of the failure on the part of Defendant Madison County to properly develop, implement, and otherwise devise a policy of adequate training for members of the Drug Task Force, Plaintiffs were deprived of their constitutional rights, privileges, and immunities. Properly trained Agents would have known not to engage in the acts which gave rise to this action.

146.    Defendant Cobb's testimony makes it clear that he believes his actions were in line with his training.

23

147.    The failure of Defendant Madison County to provide adequate and proper training relating to proper searches, arrests, and interactions with citizens who refuse to cooperate with officers, as evidenced by the actions of both Special Agents in this matter, and to provide adequate and proper training relating to the use of force is so grossly negligent that it amounted to deliberate indifference and disregard for the constitutional rights of Plaintiffs. As a result of the failure to train its Agents, Defendant Madison County is liable for damages for the malicious prosecution, false arrest, unlawful search, and the use of excessive use of force committed against Plaintiffs, pursuant to 42 U.S.C. §1983.

**COUNT 8 –  FAILURE TO TRAIN**
**IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS**
**TO THE UNITED STATES CONSTITUTION**
**(AGAINST DEFENDANT CITY OF JACKSON)**
**(42 U.S.C. § 1983)**

148.    Plaintiff re-alleges paragraphs 1-147 of this Complaint as if set forth verbatim herein.

149.    Defendant City of Jackson failed to provide adequate training to its law enforcement officers regarding arrests, searches, treatment and control of citizens exercising their right to not interact with officers, and appropriate use of force. Defendant City of Jackson has a non-delegable duty and responsibility to formulate, oversee, and implement official policies, practices, customs, and procedures to be carried out by its law enforcement officers and other personnel.

150.    As a direct and proximate consequence of the failure on the part of Defendant City of Jackson to properly develop, implement, and otherwise devise a policy of adequate training for law enforcement officers, Plaintiffs were deprived of their constitutional rights,

privileges, and immunities. Properly trained law enforcement would have known not to engage in the acts which resulted in the deprivation of the constitutional rights of Plaintiffs.

151.    The failure of Defendant City of Jackson to provide adequate and proper training relating to proper searches, arrests, and interactions with citizens who refuse to cooperate with officers, as evidenced by the actions of five of its officers in this matter, and to provide adequate and proper training relating to the use of force is so grossly negligent that it amounted to deliberate indifference and disregard for the constitutional rights of Plaintiffs. As a result of the failure to train its officers, Defendant City of Jackson is liable for damages for the malicious prosecution, false arrest, unlawful search, and the use of excessive use of force committed against Plaintiffs, pursuant to 42 U.S.C. §1983.VII.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against Defendants on each Count of the Complaint and prays for the following relief:

1.    Permit Plaintiffs leave to amend this Complaint after reasonable discovery;

2.    Empanel a jury to try this matter;

3.    Award Plaintiffs compensatory damages;

4.    Award Plaintiffs punitive damages against the individual defendants;

5.    Award Plaintiffs their reasonable attorney's fees and costs, pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 1920;

6.    Award costs and expenses incurred in this action pursuant to Rule 54 of the Federal Rules of Civil Procedure;

7.    Award pre-and post-judgment interest in an amount according to the proof at trial; and

8.      Grant the Plaintiffs such further relief as the Court may deem just and proper.


Respectfully submitted,

/s/ *Bryce W. Ashby*
Bryce W. Ashby (TN# 26179)
DONATI LAW, PLLC
1545 Union Avenue
Memphis, TN  38104
(901) 278-1004 (Office)
(901) 278-3111 ( Fax)
bryce@donatilaw.com

Brandon L. Flechas (TN# 38907)
STROUD, FLECHAS, & DALTON
5779 Getwell Road, Building C1
Southaven, MS 38672
(662) 371-6580
brandon@stroudlawyers.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing electronically filed document was served upon all counsel of record via the Court's CM/ECF system on the 22nd day of November, 2025.

/s/ *Bryce W. Ashby*
Bryce W. Ashby